## Case No. 16,501.

UNITED STATES v. THREE HUNDRED
AND EIGHT CADDIES OF
TOBACCO.

[10 Int. Rev. Rec. 126.]

District Court, S. D. New York. 1869.

INTERNAL REVENUE ACT—FRAUDULENT BOND.

[The fact that one or more of the securities on a bond were totally insufficient and worthless at the time of going on the bond, and that the principal was aware of the fact, is material evidence on the question of the fraudulent intention of the parties.]

The tobacco, factory, and machinery, and raw material were claimed by George E. Hutchinson, whose factory was at No. 510 Commercial alley. It was alleged that the claimant had given false bonds. The evidence adduced at the trial tended strongly to show that the bonds which had been given to secure the government the payment of its taxes were false and fraudulent. The first bond was given for $8,000, and there were upon it as sureties the names of Lloyd B. Adamson and Will. H. Latshaw, who were shown in evidence to be saloon lunch-eaters. Jasper Button testified that they slept in his office at night, and he was in the habit of giving them from five cents to ten cents each in order that they might obtain a drink at Mr. Heidler's saloon and that they might secure the best meal possible. The barkeeper at length complained to Mr. Button for having sent them there to get their drinks, Heidler losing by the operation. This bond was accepted by the collector, and the factory ran upon it from the 16th of May until the second bond was given, on the 24th of June, during which time over 25,000 pounds of plug tobacco was manufactured. Adamson, who was on the first bond, was secured by Mr. Hutchinson, as his agent to obtain a new bond for the sum of $20,000, which was required by the government. Through his instrumentality, was obtained, among other sureties, Jacob S. Ritze, and Andrew J. Patterson. Ritze was brought from jail, where he has been for several weeks, and put upon the stand. He testified in effect that, at the time of giving the first bond, he was utterly worthless as a security and had been secured by Adamson. Patterson was also proved to be a man without means, a lunch-eater and a loafer round bar-rooms. It also appeared that Adamson, Ritze and Patterson slept in Button's intelligence office, and it was stated that Patterson's bed consisted of a newspaper. It was further given in evidence that Hutchinson first met the new sureties at the Broad Gauge Saloon, where they had been taken by Adamson. Neither Adamson, Latshaw nor Patterson can now be found; and Ritze was secured by the marshal taking him into custody. Hutchinson had come from Galveston, Texas, and it appeared that Mr. Jas. F. Chapman had advanced $1,500 to Hutchinson to start the factory, upon which

sum he got interest at the rate of 2 per cent. per month. Mr. Chapman also appeared as a surety on the second bond, and swore on witness stand that he had no unincumbered real estate in the state except a few lots in Kansas City, which were in an addition so far out that the main town could not be seen. These were valued at $2,500, and he had taken them in payment of a debt. With such bonds the factory went into operation and in May and June manufactured over 33,000 pounds of tobacco, on which tax accrued to the United States to the amount of $13,422, none of which had been paid. The books of the factory were seized by the government, and it appeared from them that upwards of $17,000 in cash had been realized and that the profits amounted to over $8,000. It also appeared that since the commencement of these proceedings Hutchinson had obtained possession of the factory by means of a delivery bond and sold it for about $4,000. The value of this bond is to be inquired into.

Mr. Lightheuzer and Mr. Robert S. McDonald were the attorneys for the claimant and made earnest efforts in his behalf.

The government's interest was ably supported by Gen. Noble, Dist. Atty., who pressed the question upon the jury, what had become of the profits of the establishment, and why had no portion of the money been paid to the United States. He contended that such miserable and intolerable fraud as had been shown should be stopped.

THE COURT instructed the jury that in deciding upon the merits of that question, if they believed that any of the securities on the bond were totally insufficient and worthless at the time of going on the bond, and the claimant knew the same, it would aid them materially in arriving at a determination as to the intention of the parties.

The jury retired and returned in a few moments with a verdict for the United States on all the articles. The value of the property forfeited is considerable, amounting to several thousand dollars.

